UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **VERNON SIMMONS** | **CIVIL ACTION NO. 3:13-cv-2843** |
|     **LA. DOC #459518** | |
| **VS.** | **SECTION P** |
| | **JUDGE ROBERT G. JAMES** |
| **WARDEN SMITH, ET AL.** | **MAGISTRATE JUDGE KAREN L. HAYES** |

**REPORT AND RECOMMENDATION**

*Pro se* plaintiff Vernon Simmons, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on October 9, 2013. Plaintiff is an inmate in the custody of Louisiana's Department of Corrections. He is incarcerated at the Franklin Parish Detention Center (FPDC); however, his complaint arose when he was incarcerated at the Tensas Parish Detention Center (TPDC). He originally complained that he was denied appropriate medical care for stab wounds and scratches he suffered on July 20, 2013; in an amended complaint he also complained that the defendants failed to protect him from the assault. He initially sued Warden Smith and Nurse Allen seeking compensatory damages and unspecified injunctive and declaratory relief; he amended his complaint to add Lt. Richard Townsend, Sgt. John Doe, and the Tensas Parish Detention Center as defendants, and he abandoned his request for injunctive relief and a declaratory judgment.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted.

*Background*

In his original complaint, filed on October 9, 2010, plaintiff alleged that at 3:50 a.m. on

July 20, 2013, he sought treatment for stab wounds and scratches. He was examined and treated by Nurse Allen. He complained to her that he was receiving improper treatment and demanded to see a physician so that it could determined whether plaintiff was bleeding internally. He also demanded a tetanus shot.  Nurse Allen advised that she could not refer him to the hospital because she is not authorized to do so by Warden Smith. [Doc. 1]

Plaintiff was directed to amend his complaint to provide factual support for his claim. Among other things he was directed to describe the injury he sustained as a result of the alleged violation of his Constitutional rights. [Doc. 5]

On January 3, 2104, he submitted an amended complaint.  He alleged that on July 20, 2013, between 3-3:45 a.m., he was awakened when a fellow inmate named Harold Brumfield began stabbing him multiple times. Thereafter he was taken to the prison infirmary where he was examined by Nurse Allen. Plaintiff demanded to be examined by a physician but his demand was rejected. Plaintiff feared that there might be "chemicals ... stored on [the] rusty ice pick used in the attack..."; that a period of more than 5 years had elapsed between the date of the attack and his last Tetanus inoculation; that he was "frightful" over the loss of blood; and, that he needed to be examined by a physician to determine whether or not he was bleeding internally.

In addition to the medical care claim, plaintiff also complained about the failure of the defendants to protect him from inmate violence. He alleged that the assault occurred while plaintiff was asleep and that he fought back only to defend himself. Finally, he alleged, "... there was no signs of inmate Harold Brumfield's actions toward plaintiff Vernon Simmons that would show or had fore knowledge of..."

As to his medical care claim, plaintiff alleged that upon his entry into the infirmary, Nurse Allen cleaned his wounds with sterilized water and then took photographs of his wounds

and bloody clothing. Thereafter Allen prepared a "body cavity chart and trauma report." Plaintiff and Allen argued about whether he should be sent to the hospital for further examination and treatment. According to plaintiff, notwithstanding his fears – that a "poison-chemical" was on the weapon, that he might "catch gangrene", that he could die from internal bleeding, or that he needed a Tetanus inoculation – "Nurse Allen in her neglectfully (sic) actions as a medical care professional acted very unprofessionally and [lacked] knowledge in her years of training for this type of matter."

He also faulted the Warden for "negligence in training security personnel" and for his failure to respond to plaintiff's grievance.

He faulted Lt. Townsend for falsifying documents and for failing to make adequate security rounds in the dormitory.

He faulted TPDC for failing in its obligation to detain State prisoners.

As to the injury sustained plaintiff again alleged that he sustained one stab wound to his left wrist, one to his left side, two to the top of his head, two to the neck, two to the right shoulder, two to the top of his chest, and three to his upper left arm. He alleged no injury resulting from the alleged failure on the part of Nurse Allen to have him transported to the hospital for further examination and treatment.

He concluded his amended complaint by requesting compensatory damages "for lack of security" against TPDC and Warden Smith, and Nurse Allen for "negligence, failure to provide proper medical treatment and security." He also prayed for punitive damages.

*Law and Analysis*

**1. Screening**

Plaintiff is a prisoner who has been permitted to proceed *in forma pauperis.* As a prisoner

3

seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir.1998) (*per curiam*). Because he is proceeding *in forma pauperis,* his complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2) (B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

*2. Failure to Protect*

Plaintiff complains that the defendants failed to protect him from violence at the hands of a fellow inmate. Plaintiff's right to protection from inmate violence is governed by the Eighth Amendment's prohibition of cruel and unusual punishment and is measured by the standard of subjective deliberate indifference enunciated by the Supreme Court in *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Under that standard, a prison official is not liable for failing to protect an inmate unless the official "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). In order to prevail plaintiff must establish that the defendant officials: (1) were aware of facts from which the inference could be drawn that a substantial risk of serious

harm existed and, (2) actually drew the inference. *Farmer*, 511 U.S. at 837. Negligent inaction can never be the basis of a failure to protect claim. *Farmer*, 511 U.S. at 835.

The legal conclusion of deliberate indifference must rest on facts clearly evincing "wanton" actions on the part of defendants. *Johnson v. Treen*, 759 F.2d 1236, 1237 (5th Cir.1985). In *Smith v. Wade*, 461 U.S. 30, 39 n. 8, 103 S.C. 1625, 1632 n. 8, 75 L.Ed.2d 632 (1983), the Court approved the following definition of wanton: "'Wanton means reckless – without regard to the rights of others ... Wantonly means causelessly, without restraint, and in reckless disregard of the rights of others. Wantonness is defined as a licentious act of one man towards the person of another, without regard to his rights; it has also been defined as the conscious failure by one charged with a duty to exercise due care and diligence to prevent an injury after the discovery of the peril, or under circumstances where he is charged with a knowledge of such peril, and being conscious of the inevitable or probable results of such failure.' 30 American and English Encyclopedia of Law 2-4 (2d ed. 905) (footnotes omitted)."

Nothing in plaintiff's complaint suggests that the defendants were guilty of deliberate indifference with regard to the complained of altercation between plaintiff and inmate Brumfield. Nothing suggests that these defendants were aware of facts from which the inference could be drawn that a substantial risk of serious harm existed. Additionally, in considering whether defendants have failed to protect an inmate, Courts must look to whether there was a "substantial" or "pervasive" risk of harm preceding the assault. A "pervasive" risk of harm may not ordinarily be shown by pointing to a single or isolated incident. *See e.g. Falls v. Nesbitt*, 966 F.2d 375, 378 (8th Cir.1992) (holding a "pervasive risk" is something more than a single incident and something less than a riot). Here plaintiff alleged no facts to suggest that the attack on him was at all foreseeable; indeed, he himself admitted that the assault was unforeseeable. Inmates

are unlikely to recover under Section 1983 for injuries sustained in an isolated assaults unless they can prove that the authorities either "set him up" for the assault or deliberately ignored his repeated <u>and clearly well-founded claims of danger</u>. There are no allegations that the defendants set plaintiff up for the attack or ignored specific claims of danger prior to the attack. The facts alleged do not demonstrate that the defendants inferred that plaintiff was at risk of an event such as the one complained of. Finally, as noted above, it does not appear that the attack was a foreseeable consequence of any violations of prison policy. Therefore, plaintiff's failure to protect claim fails to state a claim for which relief may be granted.

### 3. Medical Care

Plaintiff also complains that he was denied prompt and adequate medical care for the injuries he sustained in the altercation with his fellow inmate. The constitutional right of a convicted prisoner to prompt and adequate medical care is also based upon the Eighth Amendment's prohibition of cruel and unusual punishment. As noted above, rights guaranteed under the Eighth Amendment are violated only if the defendants act with deliberate indifference to a substantial risk of serious harm which results in injury. Deliberate indifference requires that the defendants have subjective knowledge of the risk of harm. Mere negligence or a failure to act reasonably is not enough. The defendants must have the subjective intent to cause harm. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

Thus, in order to establish an actionable constitutional violation a plaintiff must allege facts tending to establish that the defendants were deliberately indifferent to his serious medical needs and safety. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 457 (5th Cir.2001). A showing of deliberate indifference with regard to medical treatment requires the inmate to submit evidence that prison officials " 'refused to treat him, ignored his complaints, intentionally treated

him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.' " *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001) (citation omitted). Furthermore, as previously noted, deliberate indifference is not the equivalent of negligence; deliberate indifference "describes a state of mind more blameworthy than negligence." *Farmer v. Brennan*, 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Under the deliberate indifference standard, it is not sufficient that defendants should have known of a substantial risk; they must have actual knowledge of the risk and must thereafter have ignored it.  In other words, a civil rights plaintiff must allege and prove that each of the defendants knew of and then disregarded an <u>excessive risk</u> of injury to him, and, that they were both aware of the facts from which the inference could be drawn that a <u>substantial risk of serious harm existed</u>, <u>and that they drew that</u> inference. *Id.* at 837. Here, plaintiff faulted the defendants for their negligence and un-professionalism in handling his injuries. As such, his complaint clearly fails to state a claim for which relief may be granted.

Finally, the deprivation of medical care can violate the Eighth Amendment only if it is shown that there has been deliberate indifference resulting in substantial harm. *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006).  Here, plaintiff was afforded the opportunity to amend his complaint to allege the harm he suffered as a result of the defendants' failure to provide appropriate medical care.  He complained in both his original and amended complaints that he feared being poisoned, infected with tetanus or gangrene, or having internal bleeding. Apparently none of those fears actually manifested themselves in actual harm to the plaintiff. Clearly then, his medical care complaint fails to state a claim for which relief may be granted.

### *Conclusion and Recommendation*

Therefore,

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.  1996).

In Chambers, Monroe, Louisiana, February 14,  2014.

　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　**KAREN L. HAYES**
　　　　　　　　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**